### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| PENNYSAVER USA PUBLISHING, LLC, *et al.*,[1] | Case No. 15-11198 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: August 21 at 11:00 a.m.**<br>**Objection Deadline: July 28 at 4:00 p.m.** |

### MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE, FOR AN ORDER, PURSUANT TO 11 U.S.C. §§ 105, 327, 328, 363, 365, AND 554 (I) AUTHORIZING THE RETENTION OF TIGER REMARKETING SERVICES, BRANFORD AUCTIONS, LLC, HILCO INDUSTRIAL, LLC, AND NORTH EAST PRINTING MACHINERY, INC., AS AGENT AND AUCTIONEER, (II) APPROVING AGENCY & SALE AGREEMENT TO PERMIT THE SALE AND/OR ABANDONMENT OF THE DEBTORS' MACHINERY, EQUIPMENT, AND INTELLECTUAL PROPERTY, AND (III) GRANTING CERTAIN RELATED RELIEF

Don A. Beskrone, Chapter 7 Trustee (the "Trustee") of the above-captioned debtors and their respective estates, by and through his undersigned proposed counsel, pursuant to sections 105(a), 327, 328, 363, 365, and 554 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Agent Retention/Sale Approval Order"), (i) authorizing the retention of Tiger Remarketing Services ("Tiger"), Branford Auctions, LLC ("Branford"), Hilco Industrial, LLC ("Hilco"), and North East

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: PennySaver USA, LLC (7098); PennySaver USA Printing, LLC (6144); PennySaver USA Publishing, LLC (1162); Orbiter Properties, LLC (0851); MonthlyMailer, LLC (2804). The Debtors' mailing address is 2830 Orbiter Street, Brea, California 92821.

1

Printing Machinery, Inc. ("NEPM" and, together with Tiger, Branford, and Hilco, the "Agent") as sales agent and auctioneer;  (ii) approving the Agency & Sale Agreement between the Trustee and Agent, a copy of which is attached as **Exhibit 1** to the Agent Retention/Sale Approval Order (the "Agency & Sale Agreement") and authorizing the sale (and/or abandonment) of certain machinery, equipment, and related intellectual property free and clear of liens, claims; and (iii) granting certain related relief.  In support of this Motion, the Trustee relies upon the Declarations (defined below) of the Agent, copies of which are attached hereto as **Exhibits B, C, D, and E** and incorporated herein by reference, and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Founded in 1962, PennySaver USA, LLC ("PennySaver," and together with PennySaver USA Printing, LLC, PennySaver USA Publishing, LLC, Orbiter Properties, LLC and Monthly Mailer, LLC, the "Debtors") was an iconic Southern California company and well-known throughout the region.  The Debtors offered a full suite of advertising products including print classified ads, online classified ads, flyers and inserts, local business listings, print display advertising, online display advertising, and PowerSites®, among others.  The Debtors' business was conducted at three primary facilities located in Brea, Mira Loma, and Vista, California (the "Facilities"), which Facilities are leased by the Debtors.

2.      In connection with its core business, the Debtors' assets include printing machinery and equipment, including web and mini-web presses, automatic inserters, pre-press equipment, and facility support equipment, along with certain intellectual property related thereto, all as listed on **Exhibit A** to the Agency & Sale Agreement (the "Assets").  In connection with an orderly liquidation of these Assets and his administration of these estates, the Trustee seeks to maximize the value of the Assets located at the Facilities, along with the possibility of locating a turn-key

purchaser or purchasers for one or all of the Facilities, through the retention of one or more auctioneers and or liquidators. As such, the Trustee has determined that it is appropriate and in the best interests of the Debtors' estates to sell the Assets as soon as possible to preserve value and maximize recoveries for creditors.

3.      The Trustee has further determined that it is appropriate and in the best interest of the Debtors' estates to retain a sales agent and auctioneer to assist in the sales of the Assets at one or more publicly marketed sales (the "Sale"). After considering several proposals, the Trustee has further determined that it is appropriate and in the best interest of the estates to retain the Agent as sales agent and auctioneer to conduct the Sale. To that end, the Trustee has entered into the Agency & Sale Agreement, a copy of which is attached hereto as **Exhibit 1** to the Agent Retention/Sale Approval Order and incorporated by reference, which sets forth the terms on which Agent would be employed, subject to Bankruptcy Court approval.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

4.      The Court has jurisdiction over this Motion under 28 U.S.C. § 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are sections 105(a), 327, 328, 363(b), (f), (m) and (n), 365, and 554 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rules 2002-1 and Rule 6004-1.

## BACKGROUND

5.      On May 29, 2015, the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. Thereafter, the United States Trustee for the District of Delaware appointed Don A. Beskrone to serve as the interim Chapter 7 trustee in these cases. The Trustee

has commenced a preliminary investigation into the Debtors' businesses, and this investigation is ongoing.

6.       On June 19, 2015, each of the Debtors filed its Statement of Financial Affair and its Schedules of Assets and Liabilities.  A section 341(a) meeting of the creditors was held on June 24, 2015 [Docket No. 5].  On June 24, 2015, a meeting of the creditors was held pursuant to 11 U.S.C. § 341(a), and the Trustee now serves as the trustee in this case pursuant to 11 U.S.C. § 702(d).

7.       On July 7, 2015, the Trustee filed the *Emergency Motion of Don A. Beskrone, Chapter 7 Trustee, for an Interim Order (I) Approving the Settlement with Capital One Business Credit Corp. Pursuant to Fed. R. Bankr. P. 9019, and (II) Authorizing the Further Use of Cash Collateral Pursuant to 11 U.S.C. Sections 105, 363, and 507, Fed. R. Bankr. P. 4001, and Del. Bankr. L.R. 4001-2* [Docket No. 53] (the "Cash Collateral Motion").  On July 10, 2015, the Court entered an Order approving the Cash Collateral Motion on an interim basis [Docket No. 58], and scheduling a final hearing for July 23, 2015 at 1:00 p.m. (ET).

## RELIEF REQUESTED

8.       By this Motion the Trustee seeks entry of the Agent Retention/Sale Approval Order, (i) authorizing the retention of the Agent as Trustee's sales agent and auctioneer, (ii) approving the Agency & Sale Agreement between the Trustee and Agent to permit the sale (and/or abandonment) of the Debtors' Assets free and clear of liens, claims and encumbrances, and (iii) granting certain related relief.

### A.  Qualifications of the Agent as Sales Agent and Auctioneer

9.       To market the Assets most effectively and to liquidate the Assets for the highest and best price, the Trustee hereby seeks to employ Agent as the Trustee's sales agent and

4

auctioneer pursuant to the terms and conditions of the Agency & Sale Agreement. As set forth below, based on the Agent's extensive knowledge and experience in conducting sales of similar assets, the Trustee has determined that the Agent – comprised of Tiger Remarketing Services, Branford Auctions, LLC, Hilco Industrial, LLC, and North East Printing Machinery, Inc. – is well qualified and uniquely situated to provide these services to the estates.

10.    Tiger has substantial experience in liquidating property both in and out of bankruptcy, and it has been retained to conduct sales in bankruptcy cases in this district and other districts around the country. *See, e.g., In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. Mar. 30, 2009) [Docket No. 2856]; *In re Linens Holding Co., et al.*, No. 08-10832 (CSS) (Bankr. D. Del. Oct. 16, 2008) [Docket No. 1861]; *In re Borders Group, Inc.*, No. 11-10614 (MG) (Bankr. S.D.N.Y. Feb. 18, 2011) [Docket No. 91]; *In re Fenwick Automotive Products, Ltd.*, No. 13-11500 (BLS) (Bankr. D. Del. Aug. 22, 2013) [Docket No. 59]; *In re Big Island Carbon, LLC*, No. 12-13023 (BLS) (Bankr. D. Del. Feb. 27, 2014) [Docket No. 80].

11.    Hilco is a leading industrial auctioneer and liquidator specializing in valuing and converting idle capital equipment into cash through a multitude of sales methodologies and disposition channels including auction, liquidation, private treaty, and sealed bid sales. Hilco is highly respected and experienced in the context of bankruptcy sales and is frequently engaged by debtors and trustees in chapter 7 and 11 cases in this district and other districts. *See, e.g., In re FormTech Industries, LLC*, No. 09-12964 (MFW) (Bankr. D. Del. Jan. 5, 2010); *In re DynAmerica Manufacturing, LLC*, No. 08-11515 (KG) (Bankr. D. Del. Oct. 10, 2008); *In re Motors Liquidation Co. (f/k/a General Motors Corp.)*, No. 09-50026 (REG) (Bankr. S.D.N.Y. Mar. 15, 2010); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Sept. 13, 2006).

12.     Branford is comprised of leading auctioneers and appraisers of industrial machinery, equipment, and inventories, and has 20 years' experience in the field.  Brandford's global industrial auction and valuation business has proficiency across a wide array of industries. Branford has also been retained to conduct auctions in bankruptcy cases in this district and other districts.  *See e.g.*, *In re Solyndra, LLC*, No. 11-12799 (MFW) (Bankr. D. Del. Dec. 21, 2011) [Docket No. 469].

13.     NEPM has been involved in more liquidation/auction sales of printing equipment than any other organization in the United States over the last 30 years.  NEPM has many years of experience in all aspects of trading of high quality used graphic arts equipment and services clients around the world.  NEPM is experienced in both sheet fed and web fed offset equipment, all types of bindery, finishing, and converting machines, digital presses, and electronic pre-press equipment. NEPM has served clients from various fields, including commercial printers, packaging printers, newspapers, trade bindery and converters, and digital print operations.  NEPM is relied upon by turnaround experts, banks, finance companies, and auctioneers to handle all aspects of liquidating large graphic arts firms.

14.     As set forth above, the Agent have substantial combined experience in marketing and conducting sales of assets of this nature, and is thus well positioned to get the highest price and maximize recovery for creditors of these estates.

**B.   Terms of the Agency & Sale Agreement**

15.     The Trustee has considered several proposals from other potential agents and has engaged in discussions regarding the terms of the Agency & Sale Agreement with the Agent.  The Trustee believes that sale of the Assets through the Agent is in the best interests of the creditors of the estates.

16.    The Trustee is seeking to sell the Assets free and clear of liens and other interests. The Agent will be authorized to sell, it its sole discretion, the Assets, in whole or in part, at live, online and/or sealed bid auction(s), and/or private sale(s) to the highest or otherwise best bidder thereof.    The Sale of the Assets shall be on an "AS IS, WHERE IS" basis and without representations, guaranties, or warranties of any kind, nature, or description by the Trustee or his representatives.    The Sale shall also include consideration of any turn-key offers, which are received by Agent in a timely manner.

17.    The Agent will prepare the Assets for the Sale, including coordination of any required cleaning and maintenance of machinery and equipment.    The Agent will also organize, tag, number, and photograph the Assets in preparation for the Sale.    The Agent will plan, promote, and manage the Sale of the Assets, including, but not limited to, creating marketing and promotional materials (including print ads, brochures, and/or online postings), booking advertising, promoting the Sale on each of the Agent's companies' websites, conducting the Sale of Assets, and coordinating the transfer and delivery of the Assets at the conclusion of the Sale. The Agent will also be responsible for collecting, reporting, and remitting all sales taxes due during the Sale to the Trustee.

18.    The pertinent terms of the proposed Sale as outlined in detail in the Agency & Sale Agreement are set forth below:

- Guarantee Amount: The Agent has provided a guarantee to the estates of $1,700,000 (the "Guarantee Amount").

- Agent Reimbursement and Costs:

  o    The Agent shall retain the next $110,000 as a flat fee, one-time reimbursement for all sale-related expenses (the "Costs") that the Agent will incur in connection with the Sale ("Agent Reimbursement").
  o    Agent shall be responsible for all Costs incurred by Agent in preparing for and conducting the sale, including labor, marketing, supplies and other related costs as

further defined in **Exhibit B** to the Agency & Sale Agreement. Agent shall not be entitled to reimbursement from the Trustee for Costs, except as otherwise provided in the Agency & Sale Agreement, without prior written authorization from the Trustee.

- o The following expenses are not included in the Costs, are not considered to be Agent obligations, and shall be paid for by the Trustee: occupancy costs, personal property insurance, data backup, removal and/or destruction, hazardous materials removal, purging equipment of materials, fluids and gasses, and providing a broomswept facility.

- o Notwithstanding the foregoing, the Trustee and Agent agree that the Agent Reimbursement amount of $110,000 includes estimated Costs to be incurred by the Agent in the cleaning and maintenance of the Assets (which Costs for cleaning and maintenance of the Assets shall be capped at $10,000) (the "Expense Cap"). Therefore, the Trustee shall not be responsible for any additional expenses incurred by the Agent in the cleaning and maintenance of the Assets, unless agreed to in writing by the Trustee and Agent.

- Assets. The Assets consist of the machinery, equipment, and related intellectual property located at the Facilities and referenced on **Exhibit A** to the Agency & Sale Agreement.

- Compensation: Agent and Trustee agree to the following Sale Proceeds distribution:

| First | $1,700,000 | 100% to Trustee | "Guarantee Amount" |
| Next | $110,000 | 100% to Agent | "Agent Reimbursement" |
| Over | $1,810,000 | 100% to Trustee | "Revenue Balance" |

- Turn-Key Sale: The Agent has been instructed by the Trustee to make all efforts to locate a turn-key purchaser for the Assets, which he believes will maximize recovery for the estates and their creditors. The Agent shall accept sealed bid offers for the turn-key purchaser for a period of 4 weeks commencing after mutual execution of the Agency and Sale Agreement (the "Turn-Key Expiration"). The sealed bid process will provide for a round of live bidding amongst those bidders deemed to be the most competitive and provides stronger recovery values.

- Piecemeal Sale: If a sale with a turn-key purchaser is not consummated, then within four weeks after the Turn-Key Expiration, the Agent will start to liquidate the Assets on a piecemeal basis through private treaty transactions, and ultimately through a webcast auction. Bidders will have the open and fair opportunity to view Assets onsite or online and submit bids before or during the auction. Agent will provide a bidding environment that allows real time online bid competition concurrent with a live auction. No further Court approval shall be needed. All sales shall be on an "AS IS" "WHERE IS" basis.

- Term of Agency & Sale Agreement: The Agency & Sale Agreement will expire 90 days after entry of an Order approving the Agreement, unless extended by written agreement between Trustee and Agent.

- <u>Buyer's Premium</u>: Agent shall be authorized to charge a buyers' premium on all Sales at a rate of 18% of the sale price for each Asset (the "<u>Buyers' Premium</u>") and retain all collected Buyer's Premiums (subject to the obligation to rebate to the Trustee) for the Agent's sole and exclusive benefit.  The Buyers' Premium will be added to each buyer's invoice, paid directly to Agent, and shall not be considered part of the Sale Proceeds or property of estates or the Trustee; <u>provided</u>, <u>however</u>, that Agent shall rebate to Trustee 3 percentage points of the Buyers' Premium on all Sales generated in excess of $1,810,000.

- <u>Allocation of Revenues</u>. Agent shall remit Sale Proceeds to the Trustee within 7 days of receipt, including any shortfall, if applicable, to make up the Guarantee Amount.  Within twenty-one (21) days following the completion of the Sale, Agent shall provide the Trustee with a Report of Sale containing an itemized statement of all Assets sold with the name of each purchaser, and the price for each item, lot or for the property as a whole if sold in bulk, for Trustee's filing in accordance with Federal Rule of Bankruptcy Procedure 6004(f).  Absent an objection filed with respect to the Report of Sale within ten (10) days of filing with the Bankruptcy Court, the Trustee shall be authorized to make Disbursements to Agent as provided for in Sections 8 and 11 of the Agency & Sale Agreement, as well as any other funds which may be due Agent, without need for any further Order of the Bankruptcy Court.

- <u>Taxes</u>: Agent shall be responsible for collecting, reporting and remitting any sales taxes due from the Sale of the assets.

- <u>Abandonment</u>:  Agent shall have the right to abandon Assets at the conclusion of the Sale. Agent will use commercially reasonable efforts to ensure all Assets are either sold turnkey or sold and removed from the Premises.

- <u>Waiver of Stay</u>.  The proposed form of Agent Retention/Sale Approval Order contains a waiver of the stay imposed by Bankruptcy Rule 6004(h). The Trustee respectfully submits that such relief is appropriate under the circumstances.

**C. Procedures to Govern Potential Assumption and Assignment of Executory Contracts and Unexpired Leases In the Event of a Turn-key Sale**

19.     In the event the Agent presents, and the Trustee accepts, a turn-key purchaser for any or all of the Assets at the Facilities, the Trustee shall enter into a turn-key purchase agreement with the turn-key purchaser, which the Trustee shall provide to the Court for approval on shortened notice (the "<u>Turn-Key Sale Approval Hearing</u>"). The turn-key purchase agreement shall specify any executory contracts and/or unexpired leases that the Trustee may wish to assume and assign to the turn-key purchaser (the "<u>Potential Assumed Contracts</u>").

20.     Upon notification from the turn-key purchaser of any executory contracts and unexpired leases it may wish to assume and assign the Trustee will serve a cure notice (the "Cure Notice") upon each counterparty to any Potential Assumed Contract (each, a "Counterparty") which shall be received ten (10) days prior to the Turn-Key Sale Approval Hearing.  The Cure Notice shall identify the amounts, if any, that the Trustee believes is owed to each Counterparty to a Potential Assumed Contract in order to cure any defaults that may exist under such contract (the "Cure Amount").  The Cure Notice shall also state the date and time by which any objection ("Cure Objection") to (i) the assumption and assignment of the applicable Potential Assumed Contract on the basis of lack of adequate assurance of future performance under section 365(b)(1) or (ii) the Cure Amount must be filed and served by the Counterparty.  If a contract or lease is assumed and assigned under the proposed sale, then unless a Counterparty properly and timely files and serves a Cure Objection pursuant to the Cure Notice, the Counterparty will receive payment from the turn-key purchaser of the Cure Amount (if any) as set forth in the Cure Notice.

## BASIS FOR RELIEF REQUESTED

### I.  Retention of the Agent as Trustee's Sales Agent and Auctioneer Should Be Approved.

#### A.  Agent Is Qualified and Disinterested

21.     Section 327(a) of the Bankruptcy Code provides that a chapter 7 trustee may employ an accountant, auctioneer or other professional to represent or assist the chapter 7 trustee in carrying out the trustee's duties only if such accountant, auctioneer or professional is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the estate.

22.     The Trustee seeks to employ and retain the Agent pursuant to section 327 of the Bankruptcy Code based on the Agent's extensive knowledge and expertise in marketing and conducting sales of similar assets, as set in detail forth above.

23.     The Trustee further believes that Agent has no disqualifying conflicts of interest. To the best of the Trustee's knowledge at this time, neither Tiger, Hilco, Branford, nor NEPM, nor any member thereof, (i) holds an adverse interest in connection with the Debtors' cases; or (ii) represents any other entity having an adverse interest in connection with the Debtors' cases, except as disclosed in the declaration of Jeffrey J. Tanenbaum (the "Tanenbaum Declaration") attached hereto as **Exhibit B**, the declaration of Ian S. Fredericks attached hereto as **Exhibit C** (the "Fredericks Declaration"), the declaration of William Gardner attached hereto as **Exhibit D** (the "Gardner Declaration"), and the declaration of Joseph Koravos (the "Koravos Declaration", and collectively, the "Declarations") attached hereto as **Exhibit E**.

24.     Thus, as set forth in the Declarations, and subject to the disclosures therein, Agent is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, such that none of Agent's officers, directors, managers, members, partners, and employees:

(a)     Is a creditor, an equity security holder, or an insider of the Debtors;
(b)     Is or was, within 2 years before the Petition Date, a director, officer, or employee of the Debtor; and
(c)     Has an interest materially adverse to the interest of the estates or any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or for any other reason.

Therefore, the Trustee believes that the retention of the Agent is in the best interest of the Trustee, the estates and their creditors.

### B. Retention Under 328(a) of the Bankruptcy Code is Appropriate

25.     Section 328(a) of the Bankruptcy Code empowers a chapter 7 trustee appointed under section 701 of the Bankruptcy Code to employ, subject to Court approval,

11

professional persons to perform services for a chapter 7 trustee under any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. *See* 11 U.S.C. § 328(a).

26.    The Trustee requests that the Agent be compensated in accordance with the terms of the Agency & Sale Agreement under section 328. The Trustee submits that, in his experience, this compensation arrangement is consistent with, and typical of, compensation arrangements of sales agents and auctioneers providing similar services to clients such as the Trustee, both in and out of chapter 7. The Trustee further submits that, in his experience, Agent's proposed compensation is fair and reasonable and should be approved by the Court.

### C. Waiver of Compliance with Information Requirements Relating to Compensation Requests in Local Rule 2016-2

27.    Pursuant to Local Bankruptcy Rule 2016-2(g), the Trustee seeks a waiver of Local Rule 2016-2's information requirements as the Agency & Sale Agreement authorizes the Agent to be compensated pursuant to sections 8 and 11 thereof without further order of the Court. Because Agent's compensation is based upon percentage of the Asset Sales without regard to hours worked or services rendered, the Trustee submits that there is no need for Agent to file fee applications. Furthermore, as Agent's compensation will be calculated and paid based on a fixed percentage fee, the Trustee submits that Agent should not be required to maintain or file time records in accordance with Local Rule 2016-2 and the United States Trustee Fee Guidelines. Based on the foregoing, the Trustee respectfully requests that the Court waive these requirements.

### II. Approval of Agency & Sale Agreement and Authorization of Asset Sale.

28.    By this Motion, in addition to seeking the approval of the Agent's retention pursuant to sections 327 and 328 of the Bankruptcy Code, the Trustee seeks an order approving the Asset Sale pursuant to section 363(b) and (f) and the terms of the Agency & Sale Agreement.

## A. Approval of the Agency & Sale Agreement

29.    As set forth above, the Trustee has determined that the Agent has the requisite expertise and is uniquely qualified to provide services to the estates.  The Trustee has further determined, based on his experience, that the terms of the Agency & Sale Agreement are fair and reasonable.  The Trustee has considered several proposals from other potential agents and has engaged in discussions regarding the terms of the Agency & Sale Agreement with the Agent.  While the Trustee received proposals from several national liquidation firms, in his business judgment the proposal set forth by the Agent and reflected in the Agency & Sale Agreement is in the best interests of the creditors based upon to the Agent's experience and expertise and the Agent's willingness to structure its retention and services around a Guaranteed Amount (and the amount of such guarantee).

## B. Approval of the Asset Sale Pursuant to § 363(b)

30.    The Trustee submits that ample authority exists for the approval of the Sale of the Assets. Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside of the ordinary course of business. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Finally, Bankruptcy Rule 6004 states, in relevant part, that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

31.    Courts interpreting section 363(b)(1) of the Bankruptcy Code have held that transactions should be approved when they are supported by the sound business judgment of the

trustee. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").

### C. Approval of the Asset Sale Free and Clear of All Encumbrances Pursuant to § 363(f)

32.    Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit sale of the Assets free and clear of all encumbrances that may be asserted in these cases. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, * 12 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

14

33.    The Trustee respectfully submits that, with respect to any valid lienholders, one or more of the tests of section 363(f) will be satisfied with respect to the transfer of the Assets.  In particular, any valid lienholders that exist will be adequately protected by having their liens, if any, in each instance against the Debtors or their estates, attach to any net cash proceeds of the Assets, after costs of Sale, in the same order of priority, and with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses that the Debtors and their estates may possess with respect thereto, as well as subject to any orders entered in these cases.  In addition, the Debtors' secured lender Capital One Business Credit Corp. ("Capital One") has given the Trustee its consent to enter in the Agency & Sale Agreement and has confirmed that it will only seek to assert its liens to the extent of the proceeds from the Sale.

34.    The Trustee further submits that the absence of an objection to the relief sought in this Motion is, or should be deemed, consent within the meaning of section 363(f)(2) of the Bankruptcy Code.  *See Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code); *see also Pelican Homestead & Sav. A'ssn v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same). Accordingly, the Trustee requests that the Sale of the Assets be free and clear of all encumbrances, with encumbrances, if any, attaching to the proceeds of the Sale of the Assets.

**D.  Approval of Process for Assumption and Assignment of Assumed Contracts in the Event of Turn-Key Sale Pursuant to § 365**

35.    As set forth in the procedures proposed above, a proposed turn-key sale may contemplate the assumption and assignment of certain executory contracts and unexpired leases to a turn-key purchaser, which will enhance the value of the proposed sale to the Debtors' estates by curtailing further administrative liability to the estates and eliminating substantial rejection claims.

15

Accordingly, the Trustee requests approval under section 365 of the Bankruptcy Code, and as part

of the proposed turn-key sale, of the assumption and assignment of the Assumed Contracts to the

turn-key purchaser, including those described in sections 365(b)(2) and (f)(l) and (3) of the

Bankruptcy Code, that purport to prohibit such assignment.

36.    Section 365(f) of the Bankruptcy Code provides, in pertinent part, that the trustee

may assign an executory contract or unexpired lease of the debtor only if –

> (A) the trustee assumes such contract or lease in accordance with the provisions of this
> section; and
> (B) adequate assurance of future performance by the assignee of such contract or lease is
> provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).  Under section 365(a), a debtor "subject to the court's approval, may assume

or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section

365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract

of a debtor, providing that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor,
> the trustee may not assume such contract or lease unless, at the time of assumption of such
> contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
> (B) compensates, or provides adequate assurance that the trustee will promptly
> compensate, a party other than the debtor to such contract or lease, for any actual pecuniary
> loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

37.    Although section 365 of the Bankruptcy Code does not set forth standards for courts

to apply in determining whether to approve a trustee's decision to assume an executory contract,

courts have consistently applied a "business judgment" test when reviewing such a decision. *See,*

*e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318

U.S. 523, 550 (1953); *Matter of Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977).  A trustee

satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986). The assumption and assignment of the Potential Assumed Contracts, if applicable, will be a necessary part of the deal that the Trustee has struck with the turn-key purchaser and, as stated above, may greatly benefit the estates.

38.    As set forth above, the Trustee will send a Cure Notice to all Counterparties upon notification by the turn-key purchaser of any Potential Assumed Contracts. The Cure Notice will notify any such Counterparties of the potential assumption by the Trustee and assignment to the turn-key purchaser of such contracts and leases, which shall be received at least ten days prior to the Turn-Key Sale Approval Hearing. The Cure Notices will set forth the "cure" amounts owing on each of the Potential Assumed Contracts, according to Debtors' books and records.

39.    Counterparties to the Potential Assumed Contracts will be given time to file an objection to the proposed Cure Amounts set forth in the Cure Notice. To the extent that no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the Trustee and the applicable Counterparty. The payment of the Cure Amounts specified in the Cure Notice (or a different amount either agreed to by the Trustee or resolved by the Court as a result of a timely-filed Counterparty objection) will be in full and final satisfaction of all obligations to cure defaults and compensate the Counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Trustee determines, prior to the Turn-Key Sale Approval Hearing, that a particular lease or contract is not truly executory, and does not need to be cured to transfer the assets to the turn-key purchaser.

40.    The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy

Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989). *See also, In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). If necessary, evidence of the turn-key purchaser's ability to provide adequate assurances to Counterparties to the Assumed Contracts will be presented at the Turn-Key Sale Approval Hearing. Moreover, any turn-key purchaser will be required to provide adequate assurance of future performance with respect to the Potential Assumed Contracts.

41.     The Trustee proposes to cure existing defaults, and provide adequate assurance of future performance, under the Potential Assumed Contracts by requiring that the turn-key purchaser pay all Cure Amounts. Accordingly, assumption and assignment of the Potential Assumed Contracts as part of the Sale of the Assets at or subsequent to the closing of the proposed Sale is appropriate under the circumstances.

**E. Authorization to Abandon Unsold Property Pursuant to § 554(a)**

42.     Section 554(a) of the Bankruptcy Code provides that after notice and a hearing, the trustee "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." *See Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (a Trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim"); *In re Grossinger's Assoc.*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995). *See also Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 507, n.9 (1986) ("[A] trustee [in bankruptcy] may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the

public health or safety from identified hazards . . . This exception to the abandonment power . . . is a narrow one."); *In re Bryson*, 53 B.R. 3, 4-5 (Bankr. M.D. Tenn. 1985) ("The effect of the abandonment is to remove the asset from the jurisdiction of the bankruptcy court.").

43.     As set forth in section 14 of the Agency & Sale Agreement, while the Agent will use commercially reasonable efforts to ensure all Assets are either sold turnkey or sold and removed from the Premises, the Agent reserves the right to abandon any Assets at the conclusion of the Sale.  To the extent that the Agent does not sell some of the Assets of the within the term set forth in the Agency & Sale Agreement, unless otherwise extended by the Trustee and Agent, the Trustee requests authorization, in his discretion, upon the expiration of such term to abandon any such Assets without incurring liability to any person or entity.  The Trustee submits that if the Agent is unable to sell any of the Assets, it would be costly and burdensome for the estates to retain, store, or ship them.  In the event of rejection of any Facility's lease, the respective landlord shall preserve its right to assert an unsecured rejection damage claim which may include any costs associated with the removal and/or disposal of the abandoned Assets (the "Abandonment Costs").  The Trustee reserves the right to object to any such claim.  In the event of any abandonment of Assets at the Facilities, the Trustee requests that the respective landlord be authorized to dispose of such property without incurring liability to any individual or entity that may claim an interest in such abandoned property.

44.     Notwithstanding the foregoing, the Trustee will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, account number, and credit or debit

card number) in any of the Debtors' hardware, software, computers, or equipment that is to be sold or abandoned.

### F. Waiver of Bankruptcy Rule 6004(h)

45.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Trustee requests that the Agent Retention/Sale Approval Order be made effective immediately upon entry by order of waiver of the 14-day stay under Bankruptcy Rule 6004(h).

46.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, Colliers suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Lawrence P. King, Colliers on Bankruptcy, ¶ 6004.10 (16th ed. 2010).  Colliers further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id.*

47.     The Trustee seeks to have the Agent commence its efforts to locate a turn-key purchaser immediately upon entry of the Agent Retention/Sale Approval Order. Accordingly, the Trustee hereby requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h).

### NO PRIOR REQUEST

48.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

### NOTICE

49.    Notice of this Motion and its accompanying exhibits will be served upon (i) the Office of the United States Trustee for the District of Delaware; (ii) Tiger, Hilco, Branford, and NEPM; (iii) counsel for Capital One; (iv) counsel to the lease Counterparties for the Facilities; and (v) all parties who have requested notice in the Debtor's case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

### CONCLUSION

**WHEREFORE,** for the foregoing reasons, the Trustee respectfully requests that the Bankruptcy Court enter the Agent Retention/Sale Approval Order, substantially in the form attached hereto as **Exhibit A,** granting the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and proper.

Dated: July 14, 2015
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/ Amanda Winfree Herrmann*

Ricardo Palacio (DE No. 3765)
Amanda Winfree Herrmann (DE No. 4615)
Aaron H. Stulman (DE No. 5807)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

*Proposed Counsel to Don A. Beskrone,*
*Chapter 7 Trustee of the Debtors*