## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PENNYSAVER USA PUBLISHING, | ) | Case No.: 15-11198 (CSS) |
| LLC, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| DON A BESKRONE, Chapter 7 Trustee | ) | |
| PennySaver USA Publishing, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No.: 17-50530 (CSS) |
| | ) | |
| OPENGATE CAPITAL GROUP, LLC, | ) | |
| OPENGATE CAPITAL | ) | |
| MANAGEMENT, LLC, PENNYSAVER | ) | |
| INVESTORS, LLC, ANDREW NIKOU, | ) | |
| JAY YOOK, DANIEL ABRAMS, ALAN | ) | |
| S. CHAFFIN, VIJAY K. MONY, and | ) | |
| VIRGINIA ANNE THORNTON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### OPINION[1]

CROSS & SIMON, LLC
Christopher P. Simon
Kevin S. Mann
David G. Holmes
1105 North Market Street
P.O. Box 1380
Wilmington, DE 19899

Counsel for OpenGate Capital
Management, LLC, OpenGate Capital
Group, LLC PennySaver Investors,
LLC,

DRINKER BIDDLE & REATH LLP
Steven K. Kortanek
Patrick A. Jackson
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801-1621

-and-

Robert K. Malone
Frank F. Velocci
Kevin H. DeMaio
Andrew Nikou and Jay Yook
600 Campus Drive

Florham Park, NJ  07932-1047

Special Litigation Counsel to
Don A. Beskrone, Trustee

Dated: May 21, 2019

Sontchi, C.J._____

## INTRODUCTION

Before the Court is the *Motion to Dismiss Pursuant to FRCP 12(b)(6)*[2] filed by

OpenGate Capital Group, LLC, OpenGate Capital Management, LLC and PennySaver

Investors, LLC's (collectively, "OpenGate"), which seeks to dismiss the Complaint[3] filed

by Don A. Beskrone, Chapter 7 Trustee for the estates of PennySaver USA Publishing,

LLC, *et al.*  The Motion was joined by defendants Andrew Nikou and Jay Yook.[4] The

Complaint contains eighteen (18) counts against the OpenGate Defendants (as defined

below) as well as the Employee Defendants (as defined below).

The Employee Defendants filed their own motion to dismiss the Complaint,[5]

which the Court granted, in part, and denied, in part, on July 11, 2018.[6]  As the Complaint

---

[1]  This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2]  Adv. D.I. 12 (the "Motion to Dismiss") and 13 (brief in support).

[3]  Adv. D.I. 1 (the "Complaint").

[4]  *See* Adv. D.I. 17.  Mr. Nikou is the founder, managing partner, and CEO of OpenGate, who at all times relevant to the Complaint had operational control over OpenGate and its affiliated and portfolio entities, including the Debtors. (Id. ¶ 29.) At all times relevant to the Complaint, Mr. Yook was a senior executive and "Partner" of OpenGate, and Nikou's "right hand man," responsible for transaction execution and portfolio management, which included, from time to time, control and direction of the Debtors' senior management. *See* Compl. at ¶ 32.

[5]  Adv. D.I. 9.

[6]  *Beskrone v. OpenGate Capital Group (In re PennySaver USA Publ'g), LLC*, 587 B.R. 445 (Bankr. D. Del. 2018) (referred to herein as "*PennySaver* Opinion").

is identical as to the OpenGate Defendants and the Employee Defendants, the Court hereby adopts holdings in the *PennySaver* Opinion *in toto*. However, the *PennySaver* Opinion only guides the Court's analysis (below) on Counts I-IX and XIII, as the Court's Opinion does not speak directly to those Counts.

As against the OpenGate Defendants, the Complaint includes the following counts:

| Count | Claim[7] |
|-------|----------|
| I | Fraudulent transfer allegedly made to OpenGate |
| II | Fraudulent transfers allegedly made to OpenGate |
| III | Fraudulent transfers allegedly made to OpenGate |
| IV | Fraudulent transfers allegedly made to OpenGate |
| V | Fraudulent transfers allegedly made to OpenGate |
| VI | Fraudulent transfers allegedly made to OpenGate |
| VII | Fraudulent transfers allegedly made to OpenGate |
| VIII | Fraudulent transfers allegedly made to Opengate |
| IX | Fraudulent transfers allegedly made to OpenGate |
| XIII | Preferential transfers allegedly made to OpenGate |
| XV | Breach of fiduciary duty claim against all Defendants |
| XVI | Breach of fiduciary duty claim against all Defendants |
| XVII | Accounting claim against all Defendants |
| XVIII | Disallowance of claims against all Defendants |

The Court will grant the Motion to Dismiss for the reasons set forth herein.

## JURISDICTION

The United States Bankruptcy Court for the District of Delaware (the "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B),

---

[7] Claims X, XI, XII and XIV were filed against the OpenGate Employees and not the OpenGate Defendants. These claims were ruled upon *in toto* in the *Pennysaver* Opinion. *PennySaver* Opinion, 587 B.R. at 455-462.

(F), and (H).  The Court has the judicial authority to enter final judgements and orders in this adversary proceeding.

Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a) because this is a proceeding relating to and arising under Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 and the above-captioned chapter 7 case.  This action is brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001.

## STATEMENT OF FACTS

### I.    Procedural Background

On May 9, 2015 (the "Petition Date"), Pennysaver USA Publishing, LLC filed a voluntary petition for relief under Chapter 7 of the U.S. Bankruptcy Code.[8]  The Court subsequently entered an order providing for the joint administration of the Debtors' cases consolidating PennySaver USA, LLC, PennySaver USA Publishing, LLC, PennySaver USA Printing, LLC, Orbiter Properties, LLC, and Monthly Mailer, LLC (collectively the "Debtors") for procedural purposes.[9]  The Office of the United States Trustee appointed Don A. Beskrone as the interim Chapter 7 Trustee of the Debtors' cases.[10]  Mr. Beskrone now serves as the trustee (the "Trustee") in these cases pursuant to 11 U.S.C. § 702(d).

As mentioned above, on November 13, 2017, Defendants Daniel Abrams, Alana S. Chaffin, Vijay K. Mony, and Virginia Anne Thornton (the "Employee Defendants") filed a Motion to Dismiss Plaintiff's Complaint.  Defendants OpenGate Capital Group, LLC

---

[8]  Compl. at ¶ 1.

[9]  Del. Bankr. No. 15-11196 D.I. 52, 2-4.

[10]  Compl. at ¶ 1.

("Capital"), OpenGate Capital Management, LLC ("Management"), and Pennysaver Investors, LLC ("Investors," and collectively with Management and Capital, "OpenGate") also moved to dismiss and joined the Employee Defendants.[11]  Andrew Nikou and Jay Yook (collectively with OpenGate, the "OpenGate Defendants") then joined OpenGate's Motion to Dismiss.[12]  As mentioned above, the Employee Defendant's motion to dismiss was granted, in part, and denied, in part, on July 11, 2018;[13]  however, the Court did not rule upon the OpenGate Defendants' Motion to Dismiss at that time. This is the Court's ruling on OpenGate Defendants' Motion to Dismiss.

## II.    Factual Background

Collectively, the Debtors formed the substance of Pennysaver, a business founded in 1962 that published a "shopper"—i.e., a weekly California newspaper that provided advertising space for local business, as well as classified ads.  The Debtors filed for chapter 7 bankruptcy relief in this Court on the Petition Date.

The Debtors are Delaware limited liability companies.  The other three non-Debtor Delaware LLCs at issue are Investors, Capital, and Management.  Throughout the Complaint, the Trustee uses the term "OpenGate" to refer to a single entity and fails to distinguish between Capital, Management, and Investors.

OpenGate is a private equity firm that acquired Pennysaver in September 2013 from then-owner Harte-Hankes, Inc., in a leveraged buy-out that included $4 million in

---

[11]  Adv. D.I. 13.

[12]  Adv. D.I. 17.

[13]  *PennySaver* Opinion, 587 B.R. 445.

5

equity and $20.5 million of new secured debt from Capital One Business Credit Corp. ("COBC").[14]

The Trustee alleges the following relationship between the LLCs at issue. Management and Capital directly managed Investors. Capital owned 98% of Investors' equity. Investors owned, directly or indirectly, the Debtors. Specifically, Investors was the sole member and manager of Debtor PennySaver USA, LLC. Management, Capital, and Investors are indistinct as a matter of day-to-day control. The OpenGate group acquired the Debtors on September 27, 2013.

### III.     Factual Allegations in the Complaint[15]

The Trustee has filed claims against managers, members and employees of the Debtors, on behalf of the Debtors. The Debtors are separate Delaware limited liability companies, governed by operating agreements. The Debtors' rights and claims, if any, against managers and members are inherently contractual. The Trustee alleges that all of the OpenGate entities or individual defendants are jointly responsible for the alleged mismanagement of the Debtors, which, the Trustee alleges, resulted in harm to the Debtors' creditors.

As the OpenGate entities are limited liability companies, direct claims of the Debtors against their managers and members must start and end with each Debtor's limited liability company operating agreement. The Trustee is in possession of all the

---

[14] Compl. at ¶¶ 5, 11 and 38.

[15] The Court summarizes the more salient allegations in the 54-page Complaint. The history and factual allegations in the Complaint are assumed herein to be true for the exclusive purpose of ruling upon the Motion to Dismiss. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

Debtors' corporate records, and has even conducted a Rule 2004 examination of OpenGate. The Trustee's legal theory is that "OpenGate" and others are liable to all of the Debtors.[16]

To acquire financing for its leveraged acquisition of Pennysaver, OpenGate presented putative lenders with rosy financial projections for Pennysaver that were premised upon a labor cost savings plan that it never attempted to implement (and likely, never intended to), and that were consistently more bullish about Pennysaver's future revenues than OpenGate's own internal projections (e.g., by showing the banks EBITDA 27-54% higher than the internal projections).[17] Whether measured by going-concern value or liquidation value, the Debtors were never worth more than the amount of the COBC debt—they were insolvent from day one, and OpenGate was fully aware of that fact.[18]

On or shortly after the Closing Date for the Pennysaver acquisition, OpenGate caused the Debtors to make $2 million in "[d]istributions to Member" to OpenGate (the "Dividend"). In addition, OpenGate caused the Debtors to pay $868,000 of closing expenses in connection with the acquisition (the "Closing Expenses"). The Debtors' payment of the Dividend and the Closing Expenses, according to the Trustee, was

---

[16] *See, e.g.*, Compl. at ¶¶ 14, 15, 17, 19, 22, 23, 26-28, 57, 58, 60, 61-63.

[17] Compl. at ¶¶ 42-52.

[18] *Id.* at ¶ 56.

gratuitous—the Debtors received no value or other consideration in exchange for these payments.[19]

In April 2014, OpenGate caused the Debtors to distribute approximately $1.8 million to OpenGate for alleged tax obligations (the "Tax Payment"). The Trustee alleges that the Debtors received no value or other consideration in exchange for the Tax Payment.[20]

Shortly after the Closing Date, OpenGate caused one or more of the Debtors to enter into a management agreement with OpenGate whereby OpenGate was to provide certain "management" services to the Debtors, in exchange for a monthly "fee" of $83,333.33 (the "Management Fees"). The Trustee alleged that OpenGate caused the Debtors to pay Management Fees from October 2013 through December 2014, but it did not provide any management services—rather, it used the management agreement as a means to siphon cash out of Pennysaver.[21]

The Trustee continues that on January 9, 2014, Defendant Yook advised the Debtors' then-CEO, Liz Gaier, that Fusion Paperboard, one of OpenGate's other portfolio companies, was having liquidity problems and that the Debtors would need to provide it with a 30-day loan for $500,000. Realizing that a loan to an OpenGate affiliate would violate the Debtors' debt covenants with COBC, however, OpenGate ginned up an "Agreement" to be executed by the Debtors and Fusion Paperboard, which purported to

---

[19] Compl. at ¶¶ 58-59.

[20] Compl. at ¶ 60.

[21] Compl. at ¶¶ 61-63.

allow the Debtors to sell scrap newsprint to Fusion Paperboard at 5% over "prevailing rates," in return for paying Fusion Paperboard a $500,000 "advance fee."  The Trustee asserts that this agreement made no economic sense for the Debtors because it would take them approximately 15 years to break even, and no rational economic actor — particularly one facing the Debtors' cash constraints — would have paid an "advance fee" of $500,000 to secure the modest economic benefits provided by the agreement.  Against the advice of counsel (who warned that the agreement could be viewed as a disguised loan violated the Debtors' debt covenants with COBC), Yook pressed forward, advising in an email that "[u]ltimately, what I care about is everyone cooperating and working on behalf of PennySaver's owners – i.e., OpenGate."  The Debtors and Fusion Paperboard executed their purported agreement on January 14, 2014, and the Debtors wired Fusion Paperboard $500,000 that same day (the "Fusion Loan").[22]

Commencing in March 2014, and over the vehement (and repeated) objections from the Debtors' senior management, OpenGate caused the Debtors to put the four OpenGate Employees on their payroll.  The OpenGate Employees were paid generous salaries and bonuses despite not working or performing any material amount of services for, or otherwise providing any material value to, the Debtors.  And starting in 2015, while the Debtors were in the midst of a liquidity crisis and their management was instituting numerous cost-cutting measures, OpenGate directed the Debtors to give each of the OpenGate Employees a raise.  In email exchange included in the Complaint, Ms.

---

[22] Compl. at ¶¶ 70-76.

Gaier, expressed concern to Yook about cash to keep the company going, and disappointment that she had just eliminated $377,000 of her own managers' bonuses to save costs only to have Pennysaver turn around and pay bonuses to the OpenGate Employees. Yook told her to stay in her lane: "[Y]ou need to delineate OG personnel from PS personnel, regardless of how the bonuses for the OG employees are being paid."[23]

In July 2014, Fusion Paperboard went under while still owing the Debtors $300,000, thus exposing OpenGate to charges that it had improperly caused the Debtors to advance money to Fusion Paperboard. To deal with that risk, OpenGate promulgated a new version of history, where money had never been loaned or paid as an advance fee to Fusion Paperboard, but instead the $500,000 was retroactively characterized on the Debtors' books as a payment for a "sublease" from Pennysaver USA, LLC and Management, whereby Pennysaver would lease "two office rooms" in OpenGate's headquarters' suites. At some time in July or August 2014, the Fusion Paperboard "Agreement" morphed into a 55-month, $9,080/month "sublease" dated "as of" January 1, 2014, with a 24-month security deposit and 31 months of prepaid rent, for a grand total of $500,000.05. On August 12, 2014, Defendant Thornton gave detailed instructions to the Debtors' VP of finance to enter back-dated entries into the Debtors' ledgers to reflect the above payments, and then further instructed him to back-date additional entries for July

---

[23] Compl. at ¶¶ 64-69.

to reflect an "amended sublease," which showed total payments of $295,000 (since Fusion Paperboard appears to have paid the Debtors approximately $205,000).

These instructions were in an email that is included in the Complaint (with the subject line: "RE: Fusion deposit," in case there were any doubt what it was really about).[24]

Commencing in October 2014, OpenGate required the Debtors to start paying OpenGate $7,500 per month for IT consulting services by Matthew Ji (the "IT Payments"), an OpenGate employee who performed few or no IT services for the Debtors, but did perform them for OpenGate.[25]

By the end of 2014, the Debtors were running short of cash because of the millions the Defendants had taken out of the company. OpenGate knew this, and was repeatedly warned about the consequences by the Debtors' operating management, but it kept withdrawing cash as long as there was cash to withdraw. Finally, in May 2015, with the Debtors' cash all but gone, OpenGate closed down the Debtors' operations without any advance notice, leaving employees and creditors holding the bag.[26]

## ANALYSIS

As summarized above, the Trustee filed an 18-count Complaint against the Defendants, including 14-counts against the OpenGate Defendants, which the OpenGate Defendants have moved to dismiss.

---

[24] Compl. at ¶¶ 77-82.

[25] Compl. at ¶¶ 83-84.

[26] Compl. at ¶¶ 24 -25.

## I.    Counts I-IX for Fraudulent Transfers

Counts I though IX of the Complaint assert the following claims (i) fraudulent transfers claims against OpenGate under theories of "actual" and "constructive" fraud for payment of the Dividend, Closing Expenses and IT Payment; (ii) fraudulent transfer claims against OpenGate under the theories of "actual" and "constructive" fraud for distribution of the Tax Payment; and (iii) fraudulent transfer claims against OpenGate under the theories of "actual" and "constructive" fraud for distribution of the Management Fees.  The Trustee casts a wide net in making these claims arguing that they are fraudulent transfer claims under § 548, including actual fraudulent transfers, constructive fraudulent transfers as well as Delaware and California state law claims against the Defendants.    California and Delaware have both adopted the UFTA, rendering the elements for the State and Federal law claims essentially the same, with the main difference that under the state law claims the lookback period extends to four years.[27]  For all other purposes, the state and federal law claims are identical.[28]  The OpenGate Defendants dispute that the Trustee has adequately pleaded all elements of 11 U.S.C. §§ 548(a)(1)(A), § 548(a)(1)(B), Delaware Code Section § 1304(a)(2)(a), and Cal. Civil Code § 3439.04(a)(2)(A).

---

[27] *In re FAH Liquidating Corp.*, 572 B.R. 117, 129 (Bankr. D. Del. 2017) ("Both California and Delaware have adopted the UFTA. The elements to state a claim for constructive fraud under the UFTA mirror the elements required to state a claim for constructive fraud under § 548(a)(1)(A), except that both California's and Delaware's UFTA extends the lookback period such that a cause of action must be brought within four years after the transfer was made.").

[28] *Id.*

The Defendants argue that both actual and constructive fraudulent transfer claims are subject to Fed. R. Civ. Pro. 9(b)'s particularity requirements and that the facts alleged do not sufficiently support a plausible inference that the Debtors received less than reasonably equivalent value in exchange for the allegedly fraudulent transfers. Furthermore, the Defendants argue that the Trustee must defeat a presumption of reasonable equivalent value when it comes to the payment of salaries, that the Trustee has no standing to sue under 544(b), and that the Trustee has failed to meet the pleading standard required by *Twombly* and *Iqbal* because the Trustee has failed to identify which of the Debtors was the entity to actually transfer funds to the Defendants and also fail the specificity requirement of which of the OpenGate received each transfer. The Court first examines which pleading standard is appropriate here, and then the elements that constitute constructive and actual fraudulent transfers as necessary.

### 1. *Constructive Fraudulent Transfers*

### a. **Legal Standard for Pleading Constructive Fraud**

This Court evaluates claims of constructive fraud under the notice pleading standard of Fed. R. Civ. Pro. 8(a)(2).[29] At the motion to dismiss stage, to plead adequately a constructive fraud claim "all that is needed … is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."[30]

---

[29] *In re Pillowtex Corp.,* 427 B.R. 301, 310 (Bankr. D. Del. 2010) ("…courts in this district have held that claims of constructive fraud (i.e., fraudulent transfers) are evaluated using Fed. R. Civ. Pro. 8(a)(2)"); *In re Mervyn's Holdings, LLC,* 426 B.R. 488, 495 (Bankr. D. Del. 2010) ("Furthermore, this Court takes the view that claims of constructive fraud, i.e. fraudulent transfers, are evaluated using Rule 8(a)(2).").

[30] *In re AgFeed USA, LLC,* 546 B.R. 318, 336 (Bankr. D. Del. 2016) ("A claim of constructive fraud, however, need not allege the common variety of deceit, misrepresentation, or fraud in the inducement . . . because

The Trustee must do more than merely recite statutory elements, but needs only to state facts with sufficient particularity to provide the defendant with fair notice of the charges against him.[31] Thus, complaints that identify the dates, amounts, source, and transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer under Fed. R. Civ. Pro. 8(a)(2)'s pleading standard.[32]

Section 548(a)(1)(B) governs claims for constructively fraudulent transfers. It requires the Trustee to allege that:

> (i)      the transfers were made within two years of the petition date;
>
> (ii)     the debtor received less than reasonably equivalent value in exchange of the transfers; and
>
> (iii)    the debtor either (a) was insolvent on the date that the transfers were made or became insolvent as a result of the transfers; or (b) was or was about to engage in a business or transaction for which any remaining property remaining with the debtor was an unreasonably small capital; or (c) intended or believed that the debtor would incur debts beyond the debtor's ability to pay; or (d) the debtor made the transfer or incurred the obligation to or for the benefit of an insider,

---

the transaction is presumptively fraudulent and all that need be alleged is that the conveyance was made without fair consideration while the debtor was functionally insolvent."); *Mervyn* 426 B.R. at 495 ("A fraudulent transfer complaint 'need only set forth facts with sufficient particularity to apprise the defendant fairly of the charges made against him.").

[31]  *Mervyn*, 426 B.R. at 495; *AgFeed*, 546 B.R. at 336 (noting that when pleading a constructive fraud claim, "the Trustee must do more than simply allege the statutory elements of a constructive fraud action.").

[32]  *AgFeed*, 546 B.R. at 337 (Bankr. D. Del. 2016) ("Here, the complaint identifies the date, amounts, source and transferee of each of the transfers…At this stage of the proceedings, the Court concludes that the facts alleged by the Trustee are sufficient to support a claim for constructive fraud under section 548(a)(1)(B)); *In re DVI*, No. 03-12656, WL 4239120 at 9 (Bankr. D. Del. 2008) (finding the complaint sufficient because the Trustee identified the transfer by date and face amount and alleged that it was for no consideration, and thus less than reasonably equivalent value); *Mervyn*, 426 B.R. at 495 (finding constructive fraud claim adequately pleaded where the Debtor specified facts identifying the property and dates involved in the transaction, the value of the transfers made, the amount of money transferred, the source of the funds, and the transferee).

under an employment contract and not in the ordinary course of business.[33]

Reasonably equivalent value and insolvency are generally factual determinations that should be reserved for discovery.[34]  So long as "the Trustee has identified the transfer by date and face amount and has alleged that it was for no consideration," the actual amount need not be scrutinized.[35]  Courts liberally review constructive fraud claims brought by a trustee, given his position as a third party outsider to the debtor's transactions.[36]

The same analysis applies to the Trustee's Delaware and California law constructive fraudulent transfer claims.  Section 544(b) "permits the trustee to step into the shoes of an existing unsecured creditor who could have avoided an action under state law."[37]  At the pleading stage, the Trustee does not need to allege the existence of or name an unsecured creditor, and may claim avoidance of any transfers incurred by the debtor under "applicable law."[38]

---

[33]  11 U.S.C. § 548(a)(1)(B).

[34]  *In re Green Field Energy Servs., Inc.*, No. 13-12783, 2015 WL 5146161, at 8 (Bankr. D. Del. 2015) ("Given the wide number of variables to consider, and the less stringent pleading requirements of Rule 8(a)(2) to constructive fraud claims, "[t]he issue of 'reasonably equivalent value' requires a factual determination that cannot be made on a motion to dismiss."); *In re Charys Holding Co.*, Inc., 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("reasonably equivalent value is a fact-intensive determination that typically requires testing through the discovery process."); *In re DBSI, Inc.*, 445 B.R. 344, 349 (Bankr. D. Del. 2011) ("insolvency is generally a factual determination not appropriate for a motion to dismiss.").

[35]  *In re FAH Liquidating Corp.*, 572 B.R. 117, 127 (Bankr. D. Del. 2017).

[36]  *Id.*

[37]  *In re DBSI, Inc.*, 477 B.R. 504, 512–13 (Bankr. D. Del. 2012).

[38]  *In re APF CO.*, 274 B.R. 634, 639 (Bankr. D. Del. 2001) ("When analyzing the sufficiency of a complaint for purposes of Rule 12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists."); 11 U.S.C. § 544(b)(1).

Section 1304(a)(2) of the Delaware Code and Section 3439.04(a) of the California Civil Code are the applicable law, and they govern fraudulent transfers as to present and future creditors. The elements to state a claim for fraudulent transfers under both of these laws are identical and mirror the elements required to state a claim for constructive fraud under Section 548(a)(1)(B).[39] They require that a debtor made a transfer (1) without receiving reasonably equivalent value in exchange; and (2) engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small.[40] The same pleading standards used to evaluate § 548(a)(1)(B) applies to evaluating the Delaware and California law equivalents. As this Court has noted, "The elements for avoidance of a fraudulent conveyance under Delaware law are essentially identical to those of section 548(a)(1)(B)," and this Court has grouped the analysis given the language of both statutes.[41]

### i.    Pleading Requirements of Specificity as to Transferee

OpenGate asserts that "liability is personal" and each specific entity is entitled to know what he or she did that is asserted to be wrongful. Indeed, fraud must be plead with particularity. In *Bank of America, N.A. v. Knight*, the court explained:

---

[39] DEL. CODE ANN. tit. 6, § 1304 (West) only differs in one word from CAL. CIV. CODE § 3439.04 (West) using the word "fraudulent" instead of the word "voidable" in the sentence "[a] transfer made or obligation incurred by a debtor *voidable* as to a creditor…" the remainder of the statutes are identical.

[40] DEL. CODE ANN. tit. 6, § 1304 (West).

[41] *In re Opus E., LLC*, 528 B.R. 30, 82 (Bankr. D. Del. 2015); *In re Nat'l Serv. Indus., Inc.*, No. 12-12057, 2015 WL 3827003, at 5 (Bankr. D. Del. 2015) (considering both Delaware state law and Bankruptcy Code constructively fraudulent transfers together); *In re American Business Financial Services, Inc.*, 471 B.R. 354 (Bankr. D. Del. 2012).

> Despite its unwieldy length, however, the complaint falls woefully short of complying with the mandates of Rule 9(b). It lumps all of the defendants together, never describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct.[42]

In other words, "[l]iability is personal.  An allegation that someone looted a corporation does not propound a plausible contention that a particular person did anything wrong.  The Rules of Civil Procedure set up a system of notice pleading.  Each defendant is entitled to know what he or she did that is asserted to be wrongful.  A complaint based on a theory of collective responsibility must be dismissed."[43]  Thus, to satisfy *Twombly* and *Iqbal*, the Trustee would have to provide specific facts as to which OpenGate Defendant received which transfer.[44]  Here, the Trustee did not make specific allegations within the complaint regarding which OpenGate entity received the transfers, except in once instance.

> In regard to the Trustee's claims regarding the transfer of the "Distribution:"

> > On or shortly after the Closing Date (and, in any event, prior to the end of 2013), OpenGate caused the Debtors to pay and transfer to OpenGate – specifically, and apparently, to Capital - $2,000,000.[45]

However, the Trustee made no specific allegations regarding which OpenGate Defendant received the "Closing Expenses," the "IT Payment," the "Tax Payment," and the

---

[42] *Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 851 (N.D. Ill. 2012), *aff'd*, 725 F.3d 815, 818 (7th Cir. 2013).

[43] *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).  *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017) ("The core of such a requirement is that each defendant is put on notice as to the scope of the claims against it." (citation omitted)).

[44] *See, e.g., Stanziale v. Heico Holdings, Inc. (In re Conex Holdings)*, LLC, 514 B.R. 405, 414 (Bankr. D. Del. 2014).

[45] Compl. at ¶ 58.

"Management Fees."  Thus, the Complaint must be dismissed, without prejudice, as to these items.

### b.    Less than Reasonably Equivalent Value in Exchange for the Transfers

The Trustee, consistent with case law, has identified the date, amounts, and transferee of each transfer.  However, it is not clear which of the "Debtors" made the transfer, though it is clear that "the Debtors" made each of the allegedly fraudulent transfers.

The Defendants argue that unless the source is made clear, the constructive fraudulent transfer claim is invalid.  But by naming each transferee and the exact amount they received per transfer, the Trustee has given each Defendant fair notice.  And he has explicitly alleged that the Debtors received less than reasonably equivalent value in exchange for the assets transferred to each Defendant.[46]  Defendants argue that the Trustee must overcome is the presumption that "salary payments" (or in this case management fees) are "reasonably equivalent value."[47]  The Defendants cite to three cases to support this claim, but not one of these cases applies the necessary pleading standard for a motion to dismiss.  This distinction is essential because disputes over reasonably equivalent value are not appropriate for determination on a motion to dismiss.[48]  Rather, they are issues to be addressed in the discovery process.

---

[46]  *Id.* at ¶¶ 88, 96, 104, 112, 120, 125, 135, 140, 145.

[47]  Adv. D.I. 10 p. 19-20.

[48]  *FAH*, 572 B.R. at 127; *In re Qimonda Richmond, LLC*, 467 B.R. 318, 327 (Bankr. D. Del. 2012) ("The Court finds that the issue of 'reasonably equivalent value' requires a factual determination that cannot be made

The Defendants also argue that the Court should reject the conclusory allegations that the Debtors received nothing in return for the Defendants' salary payments as violations of the pleading standard. Yet again, the Defendants have misinterpreted the two cases they cite.

In *In re AgFeed*, the Court relies on the fact that the complaint alleges that the transfers were made by "[AFI] and related entities or by entities with a business relationship to [AFI]" to conclude that the Complaint failed to meet the particularity requirements of Fed. R. Civ. Pro. 9(b).[49] But, unlike the generalized pleading in *AgFeed*, the Trustee identifies explicitly that every Debtor corporation here is filing for bankruptcy jointly, and does not allege any third-party entities to have made the transfers. The Trustee's complaint does not suffer from the overall vagueness of the complaint in *Agfeed*.

In *In re Pitt Penn Holding Co.*, the complaint was found insufficient because it did not identify an avoidable transfer because the complaint failed to identify the defendant's compensation.[50] Instead, the complaint stated only that the defendant was paid "far more than justified."[51] In the case at hand, however, the Trustee has sufficiently stated the specific amount the OpenGate Defendants received, the dates they received the amounts, and that the made these payments for no material benefit.

---

on a motion to dismiss."); *DVI*, 2008 WL 4239120 at 9; *In re Charys Holding Co.*, 443 B.R. 628, 638 (Bankr. D. Del. 2010).

[49] *JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*, 558 B.R. 116, 130 (Bankr. D. Del. 2016).

[50] *Indiv. Enters. Of Am., Inc. v. Mazzuto (In re Pitt Penn Holding Co.)*, 484 B.R. 25, 53-54 (Bankr. D. Del. 2012).

[51] *Id.*

The Trustee's Complaint has sufficiently pled that the OpenGate Defendants were not paid a reasonable equivalent value for their services or lack of services.

### c.    Insolvency

The Trustee alleges that the Debtors were either insolvent, or rendered insolvent; were engaged in business or transaction, or were about to engage in such business or transaction, for which any property remaining with the Debtors was an unreasonably small amount of capital; or intended to incur debts that would be beyond the ability of the Debtors to pay as such debts matured because the Debtors were insolvent from day one.[52]  He describes the Debtors' declining financial performance and loan obligations.[53]  The Defendants do not argue that the Trustee has failed to adequately plead the Debtors' insolvency.  Insolvency is best left to discovery to determine and should not generally be decided on a motion to dismiss.[54]  This is because the determination of insolvency is highly fact-specific and "should be based on seasonable appraisals or expert testimony."[55]  A motion to dismiss is not the proper place to bring in experts to determine insolvency.

### d.    Conclusion

The Court will grant, without prejudice, the constructive fraudulent transfer claims in Counts I-IX because the Trustee has not met the pleading requirements and has

---

[52]  *See* Compl. at ¶¶ 12-13, 17, 38-40, 42-49, 53-56.

[53]  *Id.*

[54]  *Supra* n. 34.

[55]  *In re Roblin Industries, Inc.* 78 F.3d 30, 38 (2d Cir. 1996).

not given the Defendants fair notice as the Trustee has not indicated which OpenGate

Defendant received each transfer (except in the allegation related to the transfer of the

"Distribution" to Capital).  As noted above, although, the Trustee correctly plead the

transfer of the "Distribution," however, as this allegation is intertwined within the same

count as other transfers and as the Court is granting leave to amend,[56] this claim will also

be dismissed for ease of administration.

### 2. *Actual Fraud*

### a.    Legal Standard for Pleading Actual Fraud

Section 548(a)(1)(A) governs Federal claims for actual fraudulent transfers.  It

requires the Trustee to allege that:

> (i)    The transfers were made within 2 years before the
> petition date.
>
> (ii)    The debtor voluntarily or involuntarily made such
> transfer with actual intent to hinder, delay, or defraud any
> entity to which the debtor was or became, on or after the date
> that such transfer was made, indebted.

California's Section 3439.04(a)(1) and Delaware's Section 1304(a)(1) hold the same

requirements as § 548(a)(1)(A).[57]  The pleading requirements for both the state and federal

claims are identical.[58]  The difference between the federal and state transfer claims is that

the state transfer claims have statutory provisions of elements the Court can consider in

evaluating actual intent.[59]  These same statutory elements are incorporated through case

---

[56] *Infra* at p. 30.

[57] *Supra* nn. 27 and 39.

[58] *Supra* n. 27.

[59] *Supra* nn. 27 and 39.

law into § 548 in the form of "badges of fraud."[60]   Thus, in evaluating the actual fraud

allegations, this Court need only evaluate the elements of § 548 as the elements for the

state transfer claims are substantially the same.

This Court evaluates claims of actual fraud under the notice pleading standard of

Fed. R. Civ. Pro. 9(b).[61]   Fed. R. Civ. Pro. 9(b) requires a party alleging fraud or mistake

to state with particularity the circumstances constituting fraud or mistake.   This is done

to put defendants on notice of the precise misconduct with which they are charged.[62]

"But 'in the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly

when the trustee…is bringing the action.'"[63]   Under this standard, to plead adequately a

constructive fraud claim the Trustee uses "badges of fraud" to allege fraudulent intent.

These badges can include, but are not limited to:

(i)     The relationship between the debtor and the transferee;

(ii)    Consideration for the conveyance;

(iii)   Insolvency or indebtedness of the debtors;

(iv)    How much of the debtor's estate was transferred;

---

[60]   *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994); *In re DiLoreto*, 266 Fed. Appx. 140, 144 (3d Cir. 2008); *In re Green Field Energy Services, Inc.*, No. 13-12783, 2015 WL 5146161 at 6 (*quoting In re Hechinger Inv. Co. of Del.* 327 B.R. 537, 551 (Del. 2005).

[61]   *See PennySaver* Opinion, 587 B.R. at 459-60; *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud."). *See also Pardo v. Gonzaba (In re APF Co.)*, 308 B.R. 183, 188 (Bankr. D. Del. 2004). *Contra AstroPower Liquidating Trust v. Xantrex Techn. Inc. (In re AstroPower Liquidating Trust)*, 335 B.R. 309, 333 (Bankr. D. Del. 2005) (rejecting application of Rule 9(b) to a constructive fraudulent transfer claim).

[62]   Fed. R. Civ. Pro. 9(b); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[63]   *In re APF Co.*, 308 B.R. at 188 (*quoting In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502, 514-15 (Bankr. D. N.J. 1995). *Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture)*, 175 B.R. 560, 567–68 (Bankr. E.D. Pa. 1994) (Because of the Trustee's "inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.").

(v)     Reservation of benefits, control or dominion by the debtor over the property transferred; and

(vi)    Secrecy or concealment of the transaction.[64]

The presence or absence of any single badge of fraud is not conclusive. 'The proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single . . . badge of fraud may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud.' Additionally, a court may consider other factors relevant to the transaction.[65]

The Trustee must allege that the timing of the transfers occurred within two years before the petition date, that the Debtors were indebted, and voluntarily or involuntarily made the alleged transfer with the actual intent to deceive those to whom they were indebted.

### i.    Pleading Requirements of Specificity as to Transferee

Again, OpenGate asserts that "liability is personal" and each specific entity is entitled to know what he or she did that is asserted to be wrongful. Indeed, fraud must be plead with particularity. In *Bank of America, N.A. v. Knight*, the court explained:

Despite its unwieldy length, however, the complaint falls woefully short of complying with the mandates of Rule 9(b). It lumps all of the defendants together, never describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct.[66]

---

[64] *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 545 (Bankr. D. Del. 2009); *accord Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 565 (Bankr. D. Del. 2012).

[65] *In re AgFeed USA, LLC*, 546 B.R. 318, 337 (Bankr. D. Del. 2016).

[66] *Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 851 (N.D. Ill. 2012), *aff'd*, 725 F.3d 815, 818 (7th Cir. 2013).

In other words, "[l]iability is personal.  An allegation that someone looted a corporation does not propound a plausible contention that a particular person did anything wrong. The Rules of Civil Procedure set up a system of notice pleading.  Each defendant is entitled to know what he or she did that is asserted to be wrongful.  A complaint based on a theory of collective responsibility must be dismissed."[67]  Thus, to satisfy *Twombly* and *Iqbal*, the Trustee would have to provide specific facts as to which OpenGate Defendant received which transfer.[68]  Here, the Trustee did not make specific allegations within the complaint regarding which OpenGate entity received the transfers, except in once instance regarding the payment of the "Distribution" to Capital.

### b.    Badges of Fraud

The transfers in question are the payment of Dividend, Closing Expenses, IT Payment, the Distribution of Tax Payment to OpenGate, as well as the Payment of Management Fees to OpenGate.  Exhibit A to the Complaint details the payment date and amount of each of the Management Fees paid to OpenGate, although does not indicate which OpenGate Defendant received the payments.

The Defendants and the Trustee disagree as to whether the Trustee has sufficiently pled "actual intent" under Fed. R. Civ. Pro. 9(b)'s particularity requirements. This requires an analysis of the badges of fraud.

---

[67] *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

[68] *See, e.g., Stanziale v. Heico Holdings, Inc. (In re Conex Holdings)*, LLC, 514 B.R. 405, 414 (Bankr. D. Del. 2014).

The first badge of fraud is the relationship between the debtors and the transferee. The Trustee sufficiently alleges a relationship between the Debtors and each OpenGate Defendant.[69]  The Trustee further alleges that OpenGate, through this relationship, looted Pennysaver by removing cash to pay lawyers, its advisors and itself.  The Trustee also alleged that OpenGate diverted a "management fee" although Pennysaver has its own management.[70]

The second badge of fraud is consideration in exchange for the conveyance. The Trustee has alleged sufficiently that there was no consideration given in exchange for the monies transferred to OpenGate.[71] The third badge of fraud is the insolvency of the Debtors. The Trustee has alleged sufficiently the Debtors' insolvency.

The fourth badge of fraud is how much of the Debtors' estate was transferred. The Trustee alleges the specific dollar amount and that the amount was more than the Debtor could bear.  The Trustee has plead that, in total, "it appears that OpenGate caused close to $7 million (and perhaps more) to be diverted from the Debtors – who desperately required the funds – for no or inadequate consideration."[72]  Although the Trustee does not allege what percentage of the Debtors' estate was transferred, he alleges sufficiently that the amount was most likely more than the Debtors could afford.

---

[69] Compl. at ¶¶ 26-28.

[70] Compl. at ¶¶ 57-63.

[71] Compl. at ¶¶ 57-63.

[72] Compl. at ¶¶ 57-63.

The fifth badge of fraud is that the Debtor reserved control of the property after it was transferred. This did not occur here. The sixth badge of fraud is secrecy or concealment of the transfer. There was no alleged secrecy involved in any of the alleged transfers to OpenGate.

The Trustee has alleged sufficiently four out of the six badges of fraud. "The confluence of several [badges of fraud] in one transaction generally provides conclusive evidence of an actual intent to defraud."[73]

### c.    Conclusion

However, as there was no specificity regarding which of the OpenGate Defendants received the transfer under the theory of actual fraud. The Court must dismiss these counts. As noted above, the Trustee correctly plead the transfer of the "Distribution," however, as this allegation is intertwined within the same count as other transfers and as the Court is granting leave to amend,[74] this claim will also be dismissed for ease of administration.

### II.    Count XIII for Failure to State a Claim for Avoidance of Federal Preferential Transfer under 11 U.S.C. §547(b) and 550(a)

Count XIII is a claim against OpenGate for preferential transfers related to certain of the Management Fees in the year prior to the Petition Date. The OpenGate Defendants assert that this claim must fail because (i) the claim is improperly premised on the

---

[73] *In re AgFeed*, 546 B.R. at 337.

[74] *Infra* at p. 30.

conclusory "insider" allegation, and (ii) it does not allege the nature and amount of any "antecedent debt."

The OpenGate Defendants also argue that the Trustee fails to identify which of the Debtors was involved in the alleged transfers and that the Complaint inconsistently alleges that the Defendants both directed and controlled Debtors' management from time to time, but also were paid for "no material contribution."[75]  The Trustee counters that the claims are not inconsistent.[76]

### 1. *Legal Standard for Federal Preferential Transfers*

> To survive a motion to dismiss, the Delaware Bankruptcy Court has held that "the following information must be included in a complaint to avoid preferential transfers in order to survive a motion to dismiss: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date [of the transfer], (ii) name of the debtor/transferor, (iii) name of the transferee and (iv) the amount of the transfer."[77]

---

[75] *Id.* The Defendants use *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[A] court is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true in deciding a motion to dismiss.") as grounds to dismiss the Trustee's allegedly inconsistent allegations.  Contrast Complaint ¶¶ 30-34 (alleging that the Defendants did no material amount of work for their salary) with Complaint ¶¶ 182-83, 188-190 (alleging that the Defendants "knowingly caused the Debtors to make the Fraudulent transfers for the benefit of, OpenGate or the Defendants to the detriment, and in contravention, of the Debtors' interests.").  However, the Trustee argues that the allegations are not inconsistent— instead, they are alternative theories of liability.  For instance, the Trustee argues that to the extent that the transfers were not gratuitous under the fraudulent transfer theory, and they were made in satisfaction of some obligation on the part of the Debtors, then the value was not reasonably equivalent to the amount of the transfer.  *See* Adv. D.I. 25 at pp. 35-37. The Court must read the Complaint in the light most favorable to the Trustee.  The Trustee has adequately argued that the Complaint is not inconsistent.

[76] Adv. D.I. 25 at 36-37.

[77] *In re Valley Media, Inc.*, 288 B.R. 189, 192 (Bankr. D. Del. 2003) (*citing Posman v. Bankers Trust Co.*, No. Adv. A-97-245, 1999 WL 33742299 at 2). *See also In re THQ Inc.*, No. 12-13398, 2016 WL 1599798, at *3 (Bankr. D. Del. 2016) (*citing In re Valley Media, Inc.*, 288 B.R. 189, 191 (Bankr. D. Del. 2003)).  *But contra In re Oakwood Homes Corp.*, 340 B.R. 510, 521-22 (Bankr. D. Del. 2006) (refusing to follow *In re Valley Media*) *with In re*

This Court requires Trustee to identify the particular Debtor making the preferential transfer where there are multiple Debtors involved in the case.[78]  If the Trustee does not meet the pleading requirements established by this Court's case law, then the motion to dismiss can be granted without the examination of the statutory elements.[79]

Because the Trustee has failed to "identify the transferor precisely by name," it is unnecessary to examine the statutory requirements.[80]  Thus, there is no need to examine the alleged insider status of the Defendants or the amount and nature of the alleged antecedent debts.  The fact that the exact identity of the Debtor transferor was not alleged is sufficient grounds to dismiss this claim.

The Court will grant, without prejudice, the motion to dismiss all claims in Count XIII.

### III.    Counts XV and XVI for Failure to State a Claim for Breach of Fiduciary Duties to the Debtor

The Trustee claims that the Defendants breached fiduciary duties of good faith and fair dealing, loyalty, and care owed to the Debtors' LLCs and the creditors of the Debtors' LLCs by knowingly and willingly causing the Debtors to make a series of

---

*Tweeter Opco*, 452 B.R. 150, 154 (Bankr. D. Del. 2011) (clarifying that the heightened pleading standard this Court used prior to *Twombly* and *Iqbal* should be reinstated and that cases such as *Oakwood Homes* decided prior to *Twombly* and *Iqbal* "may no longer be good law.").

[78]  *In re Tweeter Opco*, 452 B.R. 150, 154 (Bankr. D. Del. 2011) ("Because there is more than one debtor in this case, the Court concludes that the Trustee must identify the transferor precisely by name.").

[79]  *Id.*

[80]  The "insider" discussion can be ignored because the Complaint has failed to meet the pleading requirements required in this Court.

allegedly fraudulent transfers.[81]  The Defendants respond that the Trustee failed to allege sufficient facts to support a plausible claim that the Defendants owed, or breached if they did owe, any duty to the Debtors or their creditors.[82]

For the reasons set forth in the *Pennysaver* Opinion,[83] the Court will grant the Motion to Dismiss Counts XV, without prejudice, and XVI, with prejudice.

### IV.    Count XVII for Failure to State a Claim for an Accounting

Under Delaware law, a claim for accounting is an equitable remedy tied to fiduciary duties.[84]  As it is a remedy, the Trustee must first plead plausibly a claim for breach of fiduciary duty before the Court can address the Trustee's arguments for granting an accounting.  As stated in the *Pennysaver* Opinion,[85] because the Trustee has not pled plausibly a claim for fiduciary duty, the Court will grant, without prejudice, the dismissal of Count XVII.

### V.    Count XVIII for Failure to State a Claim for Disallowance of 11 U.S.C. § 502(d)

The Trustee objects to the allowance of any claims filed by, or on behalf of, OpenGate or any of the Defendants, generally.  As held in the *PennySaver* Opinion,[86] the Trustee has failed to obtain a judicial determination on either the preference or the

---

[81] Compl. at ¶ 181.

[82] D.I. 10 pp. 9-16.

[83] *PennySaver* Opinion, 587 B.R. at 462-67.

[84] *In re USDigital, Inc.*, 443 B.R. 22 (Bankr. D. Del. 2011) (*quoting In re Stone & Webster, Inc.*, 2009 WL 426118, at 5 (Bankr. D. Del. 2009) (citing *Albert v. Alex Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at 11 (Del. Ch. 2005))).

[85] *PennySaver* Opinion, 587 B.R. at 467.

[86] *PennySaver* Opinion, 587 B.R. at 468.

fraudulent transfer claims.  The Court will grant, without prejudice, dismissal of Claim XVIII.

## VI.    Trustee's Motion to Amend the Complaint

The Trustee requests leave to amend the Complaint in order to supplement the allegations upon any dismissal by the Court.[87]  Federal Rule of Civil Procedure 15(a), made applicable to this proceeding by Fed. R. Bankr. P. 7015, provides that a court should "freely give leave [to amend a pleading] when justice so requires."[88]  The decision to grant a motion for leave to amend is within the "sound discretion" of the court.[89]  "Courts have shown a strong liberality . . . in allowing amendments."[90]  This is the Trustee's first Complaint.  The Trustee can amend the Complaint to meet the pleading requirements for at least some of the claims. The request for dismissal with prejudice is denied except for the claims in Count XVI, which are futile.

## CONCLUSION

As discussed above, the Complaint is deficient and must be amended prior to the litigation against the OpenGate Defendants continuing.  The Court will grant the Motion to Dismiss Counts I-IX, XIII, XV and XVII-XVIII without prejudice and Count XVI with prejudice.

---

[87]  Adv. D.I. 25, p. 40.

[88]  Fed.R.Civ.P. 15(a).

[89]  *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518-19 (3d Cir. 1988) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[90]  *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984); *see also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings should be liberally granted."); *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984) ("Fed.R.Civ.P. 15 embodies the liberal pleading philosophy of the federal rules.").

The Court will grant the Trustee leave to amend the Complaint, except for Count XVI.  An order will be issued.